UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

v. **Crim. No. 20 CR 407 (RMB)**

MUGE MA,

Defendant.

---

**DEFENDANT MUGE MA'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)(1)**

Dear Judge Berman:

Defendant Muge Ma, by and through undersigned counsel, respectfully moves this Court pursuant to 18 U.S.C. § 3583(e)(1) for an Order terminating his supervised release. Mr. Ma has served approximately two years and eight months of the five-year term of supervised release imposed by this Court on April 21, 2022—well in excess of the one-year statutory minimum. As set forth below, Mr. Ma's exemplary post-release conduct, full compliance with the conditions of supervision, substantial rehabilitation, productive employment, and continued educational pursuits all demonstrate that early termination is warranted by his conduct and in the interest of justice.

## BACKGROUND

### A. The Underlying Offense and Sentence

On April 21, 2022, this Court sentenced Mr. Ma to a total term of 52 months' imprisonment: 28 months on Count One (Bank Fraud, 18 U.S.C. § 1344) and 24 months on Count Two (Aggravated Identity Theft, 18 U.S.C. § 1028A(a)(1)), to run consecutively, followed by five

years of supervised release. The conviction arose from Mr. Ma's submission of fraudulent Paycheck Protection Program ("PPP") loan applications during the COVID-19 pandemic.

As this Court is aware, Mr. Ma's case presented several significant mitigating features. He voluntarily withdrew and cancelled all of his loan applications before becoming aware of any investigation—conduct that appears to have been unique among the hundreds of PPP fraud prosecutions nationwide. No bank lost any funds, no PPP proceeds were disbursed, and no restitution was ordered. This was Mr. Ma's first and only contact with the criminal justice system.

**B. BOP Custody and Release**

Mr. Ma was released from Bureau of Prisons custody on August 17, 2023. While incarcerated, Mr. Ma compiled an extensive record of rehabilitative programming. As part of his rehabilitative programming, Mr. Ma completed an intensive food-safety course and passed a rigorous examination, earning the ServSafe Food Protection Manager Certification on May 26, 2023 — a nationally recognized credential accredited by the American National Standards Institute (ANSI) and the Conference for Food Protection (CFP). His BOP Program Transcript (attached as Exhibit 1) reflects participation in more than thirty programs, including Criminal Thinking, Anger Management (multiple sessions), Emotional Self-Regulation, Cognitive Skills, Arthritis Foundation exercise programming, Healthy Aging, Brain Health as You Age, Health & Wellness, Money Smart, Embracing Interfaith Cooperation, the National Parenting Program, Inside Out Dad, and Phase One reentry programming, among others. This record of voluntary, sustained engagement with rehabilitative programming far exceeds what is typical and reflects a genuine commitment to personal growth and self-improvement.

**C. Post-Release Conduct and Compliance**

Since his release on August 17, 2023, Mr. Ma has maintained an unblemished record of compliance with all conditions of his supervised release. He has completed all monthly supervision reporting requirements as reflected in attached reporting receipts and confirmations. In recognition of his exemplary compliance, in April 2024 his supervision was transferred to the Low Intensity Unit ("LIU"), a designation reserved for supervisees who have demonstrated sustained, low-risk behavior. Mr. Ma has strictly complied with all travel restrictions and has sought and obtained

advance approval for every out-of-district trip he has taken during supervision. In fact, his only two out-of-district trips were work-related trips for final-round employment interviews in New Jersey and Connecticut.

Mr. Ma underwent the required counseling/mental-health evaluation, and the evaluating psychiatrist determined that no ongoing mental-health treatment program was necessary. That clinical determination further supports the conclusion that Mr. Ma does not present a risk profile requiring continued supervision or treatment-based oversight.

### D. Employment and Professional Activity

Mr. Ma has been gainfully employed since his release and has generated paid employment income. He has actively pursued serious, senior-level opportunities in advanced AI architecture and development, including final-round interviews in multiple states. As Mr. Ma has attested in his declaration, the continued conditions of supervised release—including travel restrictions and reporting obligations—have created friction with legitimate employment opportunities, even as he has complied fully with the approval process.

Some employers withdrew job offers, in part due to ongoing federal supervision. Early termination would remove these impediments and allow Mr. Ma to pursue his professional life without unnecessary constraint.

### E. Continued Education: Advanced Certifications in AI, Machine Learning, and Data Science

Mr. Ma has also demonstrated a continued commitment to education and reintegration through his engagement with Columbia University's Justice Through Code ("JTC") program. JTC is an intensive technology-education initiative run through Columbia's Center for Justice, designed to equip justice-impacted individuals with professional coding and technology skills.

In August 2024, Mr. Ma was recommended by the JTC admissions team for the advanced Tech Pathways track—a competitive, skills-intensive program requiring proficiency in Python and JavaScript. He was invited to complete the Foundation preparatory program and subsequently

received an invitation to complete a HackerRank technical coding challenge as part of the Tech Pathways Spring 2025 selection process.

These materials reflect not only Mr. Ma's initiative in pursuing educational opportunities, but also the assessment of Columbia's admissions professionals that he possesses the aptitude for advanced technical training.

Mr. Ma also independently strengthened his technical skills, developing advanced proficiency in SQL and PySpark for large-scale data engineering, analytics, data science, and AI/ML development.

Recently, his diligence, sustained commitment to continuing education, and rigorous self-directed learning have resulted in several advanced industry-recognized technical certifications, including:

-- Microsoft Certified Advanced Agentic AI Business Solutions Architect

-- Microsoft Certified Azure AI Engineer

-- AWS Certified Solutions Architect- Professional

-- Snowflake Certified SnowPro Advanced Data Scientist

-- Snowflake Certified SnowPro Advanced Architect

-- Snowflake Certified SnowPro Specialty GenAI

-- Snowflake Certified SnowPro Core

This continued education and career trajectory in AI, machine learning, and data science underscores Mr. Ma's commitment to building a productive, law-abiding, and professionally meaningful future.

## LEGAL STANDARD AND ARGUMENT

Under 18 U.S.C. § 3583(e)(1), a court may, "after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," terminate a term of supervised release "at any time after the expiration of one year of supervised release … if it is satisfied that such action is warranted by the conduct of the defendant released and the interest

of justice." The Second Circuit has recognized that early termination is appropriate where the defendant has demonstrated rehabilitation and full compliance. *See United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) (holding that district courts have broad discretion under § 3583(e)(1) and should consider changed circumstances).

Each of the relevant statutory factors supports early termination in this case:

**1. Nature and Circumstances of the Offense; History and Characteristics of the Defendant (§ 3553(a)(1)).**

Mr. Ma's offense, while serious, involved no actual loss to any victim. He voluntarily withdrew all loan applications before any funds were disbursed and before he became aware of any investigation. This was an isolated lapse by a then-36-year-old first-time offender with no prior criminal history. His history and characteristics—including an MBA education, a record of community service attested to by nearly fifty letters submitted at sentencing, and a strong family support structure—all militate in favor of termination.

**2. Deterrence (§ 3553(a)(2)(B)).**

Mr. Ma has been amply deterred. He endured 52 months of incarceration under punishing pandemic-era conditions at the MCC and MDC, contracted COVID-19 while in custody, suffered anti-Asian hate and physical threats, and bore the devastating collateral consequences of conviction, including destruction of his businesses and finances, severe emotional toll on his family, ICE detention and supervision, potential revocation of permanent residency, loss of opportunity to serve in the U.S. military, and withdrawal of multiple job offers. He has now completed more than half of his supervised release term without a single violation. Additional supervision offers no meaningful incremental deterrent value.

**3. Protection of the Public (§ 3553(a)(2)(C)).**

Mr. Ma is non-violent and poses no threat to public safety. His offense was financial, non-violent, and resulted in zero loss. His transfer to the Low Intensity Unit confirms the Probation Office's own assessment that he presents minimal risk. His sustained compliance, employment,

and educational engagement all confirm that continued supervision is unnecessary to protect the public.

**4. Rehabilitative Needs (§ 3553(a)(2)(D)).**

Mr. Ma's rehabilitative needs have been met. His BOP programming record encompasses dozens of courses spanning food protection management, cognitive-behavioral therapy, emotional regulation, parenting, health, financial literacy, and reentry preparation. Post-release, he has continued his growth through Columbia's JTC program, rigorous self-directed technical learning, and gainful employment as a senior AI/machine learning architect and data scientist. His counseling evaluation resulted in a clinical determination that he did not require ongoing mental-health treatment, further supporting his stability, compliance, and low-risk profile. There is no rehabilitative purpose served by continued supervision.

**5. Supervision Creates Unnecessary Friction (§ 3553(a)(4), (a)(5), (a)(6), (a)(7)).**

Continued supervised release imposes practical burdens on Mr. Ma's ability to pursue legitimate professional and educational opportunities. Despite his full compliance with the travel-approval process, supervision requirements have created friction for employment interviews and work-related travel. Some employers withdrew job offers, in part due to ongoing federal supervision. Termination would allow Mr. Ma to pursue his career without unnecessary constraint, consistent with the principle that a sentence should be sufficient but not greater than necessary to achieve the purposes of sentencing. Moreover, continued supervision consumes Probation Office resources that would be better directed toward higher-risk supervisees.

## CONCLUSION

For the foregoing reasons, Mr. Ma respectfully requests that this Court enter an Order terminating his supervised release pursuant to 18 U.S.C. § 3583(e)(1). Mr. Ma has served more than half of his five-year term without incident, has fully complied with all conditions, has been transferred to the Low Intensity Unit, is gainfully employed as a senior AI/machine learning architect and data scientist, has successfully completed multiple phases of advanced technical

education through Columbia University and continues rigorous self-directed technical learning, has accordingly attained advanced industry-recognized technical certifications in AI, machine learning, and Data Science, and has demonstrated through every measure available that he has been fully rehabilitated and presents no risk to public safety. Early termination is warranted by his conduct and is in the interest of justice.

Respectfully Submitted,

Peter Katz, Esq.
LAW OFFICES OF PETER KATZ, LLC
116 Village Blvd., 2nd Floor
Princeton, NJ 08540
Attorneys for Defendant Muge Ma

Dated: April 28, 2026